UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00454-MR

| GERALD DAMONE HOPPER, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) ORDER |
| GARY McFADDEN, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1] filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 7].

**I.   BACKGROUND**

Pro se Plaintiff Gerald Damone Hopper is a convicted federal prisoner currently detained at the Mecklenburg County Jail (the "Jail") in Charlotte, North Carolina, for a supervised release violation. [Doc. 1 at 2, 4]. He filed this action on August 31, 2022, claiming that his medical needs are not being properly addressed due to an unconstitutional policy "instituted" by Defendants Gary McFadden, identified as the Sheriff of Mecklenburg County; FNU LeBliss, identified as a medical doctor employed by the Jail; Wellpath, identified as "health care/medical providers" at the Jail; and FNU

Walton, identified as a physician's assistant employed by the Jail.[1] [Id. at 2-3].

Plaintiff alleges as follows. On April 11, 2022, Plaintiff was arrested for a "probation violation warrant" and detained in the Jail.[2] [Id. at 4, 6]. After Plaintiff was processed, a nurse "employed by Wellpath contracted by the [Jail]" examined the Plaintiff. Plaintiff told the nurse that he wears a colostomy bag because of a shotgun injury.[3] Plaintiff told the nurse that he had an appointment scheduled with a gastroenterologist at Atrium Health on April 25, 2022, to start the process of colostomy reversal surgery. [Id. at 6]. The nurse told Plaintiff that the Jail does not treat or provide services for colostomy reversal surgery. Then, after a "sick call" request, Plaintiff was seen by Defendant Walton. Plaintiff explained the same April 25 appointment to Defendant Walton, including that the procedure was "long overdue." Defendant Walton told Plaintiff that the Jail has a policy not to treat or provide services for colostomy patients. [Id. at 6]. After filing a

---

[1] Plaintiff sues Defendants McFadden and LeBliss in their individual and official capacities, Defendant Wellpath in its official capacity, and Defendant Walton in his/her individual capacity.

[2] A search of the Bureau of Prisons inmate locator website shows that Plaintiff was released from federal custody on May 7, 2019.

[3] In colostomy patients, the end of the colon is attached to a surgical opening in the belly wall, or stoma, and attached to a colostomy bag for removal of waste from the patient's body.

2

Case 3:22-cv-00454-MR   Document 8   Filed 10/04/22   Page 2 of 12

grievance to see a doctor, Plaintiff was seen by Defendant LeBliss. Plaintiff explained the need for the scheduled appointment for his colostomy to Defendant LeBliss, who responded that the medical department has a policy not to treat or provide services for colostomy surgery. [Id. at 7].

On August 10, 2022, Plaintiff filed a grievance complaining that he was experiencing severe pain around his stoma. On August 16, 2022, Plaintiff filed another grievance, this time complaining about pain and bleeding around his stoma. On August 17, 2022, Plaintiff filed a "sick call" request and a grievance complaining about the same pain and bleeding. As of Plaintiff's Complaint, Plaintiff had not seen a nurse, physician's assistant, or doctor concerning the grievances. [Id. at 7].

Plaintiff also complains that, despite suffering from deep vein thrombosis and paralysis in his right leg, he was assigned to an upstairs cell in the Jail's general population. Plaintiff alleges that his conditions make it painful to climb stairs. [Id. at 5].

Plaintiff claims that his rights under the Eighth Amendment have been violated "for cruel and unusual punishment" and appears to allege that his cell assignment and/or the lack of colostomy care violates the ADA.[4] [Id. at

---

[4] Plaintiff also alleges that "Defendants' policy deny Prisoners Due Process and Equal Protection under the Law." [Doc. 1 at 4 (errors uncorrected)]. Plaintiff, however, makes no other allegations relative to an equal protection claim and delineated his Fourteenth

3

3-4, 6].

For injuries, Plaintiff claims to have suffered pain and bleeding from his stoma, pain and stiffness in his right leg and thigh, and mental and emotional distress. [Id.].

For relief, Plaintiff seeks monetary and punitive damages, as well as "injunctive relief from a policy that den[ies] Plaintiff access to medical care for a serious medical need." [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

---

Amendment deliberate indifference claim as arising under the Eight Amendment. The Court, therefore, will not further address these putative claims. Plaintiff may seek to amend his Complaint to state a claim under these provisions, if he so chooses.

4

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Section 1983 Claim

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff here claims that he has been denied adequate medical care for his colostomy because of an unconstitutional policy "instituted" by Defendants.[5]

---

[5] While it seems unlikely that Defendants Wellpath, LeBliss or Walton had any involvement in the Jail's scope-of-care policy decisions (or that LeBliss and Walton were employees of the Jail rather than Wellpath), the Court will nonetheless assume the truth of these allegations for the purpose of initial review.

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment generally fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Because Plaintiff is a pretrial detainee, however, his deliberate indifference claims are properly brought under the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to arrestee's deliberate indifference claims). The Fourth Circuit, however, has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See e.g., Young v. City of Mt. Rainer, 238 F.3d 567, 575 (4th Cir. 2001); Martin, 849 F.2d at 863; Shover v. Chestnut, 798 Fed. App'x 760, 761-62 (4th Cir. 2020).

To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young, 238 F.3d at 575-76 (citations omitted). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no

constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

### 1. Official Capacity Claims

Plaintiff sues Defendants McFadden, LeBliss, and Wellpath in their official capacities. Suits against sheriffs and sheriff's office employees in their official capacities are in substance claims against the office of the sheriff itself. Gannt v. Whitaker, 203 F.Supp.2d 503, 508 (M.D.N.C. Feb. 26, 2002). Municipalities and other local government units can be sued under § 1983 "when the execution of a government's policy or custom … inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018 (1978) (holding that in an official capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law). A viable § 1983 Monell claim, therefore, consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. Emesowum v. Arlington Cty, No. 1:20-cv-113, 2020 WL 3050377, at *5 (E.D. Va. June 5, 2020) (citations omitted). In other words, a governmental unit is liable when a policy or custom is fairly attributable to the governmental unit as its own and is the moving force behind the particular

constitutional violation.  Id. (citing Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987) (quotation marks omitted)).

Here, Plaintiff claims that Defendants instituted a policy that denied Plaintiff adequate and necessary medical care while Plaintiff is detained at the Jail.  These claims "actually constitute a suit against the entity of which those officials are agents—in this case, the Office of Sheriff of [Mecklenburg] County."  Gantt, 203 F.Supp.2d at 508 (citing Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985)).  The Court finds, for the purpose of initial review, that Plaintiff has stated a Fourteenth Amendment claim against the Mecklenburg County Sheriff's Office ("Sheriff's Office") based on the policy-driven denial of adequate medical care by virtue of his claim against Defendant McFadden.  Plaintiff's official capacity claims against Defendants LeBliss and Wellpath, which are also are in substance claims against the Sheriff's Office, are redundant and will be dismissed.  Id. (citing Ramsey v. Schauble, 141 F.Supp.2d 584, 591 (W.D.N.C. 2001)).

### 2.  Individual Capacity Claims

Plaintiff also sues Defendants McFadden, LeBliss, and Walton in their individual capacities.  As to Defendants Walton and LeBliss, Plaintiff alleges that these Defendants saw Plaintiff in response to Plaintiff's sick call request and grievance, respectively, and that these Defendants explained the Jail's

policy not to provide colostomy care. Plaintiff told Defendant Walton that "the colostomy reversal was long over-due." Plaintiff alleges, therefore, that Defendants LeBliss and Walton provided deficient medical care based on an unconstitutional policy. The Court will allow Plaintiff's individual capacity claims against Defendants LeBliss and Walton to proceed on initial review as not clearly frivolous. The Court, however, will dismiss Plaintiff's individual capacity claim against Defendant McFadden because Plaintiff has not alleged that McFadden personally participated in Plaintiff's relevant medical care. See Burgess v. Goldstein, 997 F.3d 541, 562 (4th Cir. 2021) (noting that there is no respondeat superior liability in § 1983 cases).

## B. ADA Claims

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on account of or because of that individual's disability: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of the ADA, Plaintiff must show that: (1) he was a qualified individual with a disability, (2) he was discriminated against, excluded from participation in, or denied the benefits of a public entity's services, programs,

9

or activities; and (3) the discrimination, exclusion, or denial of benefits was because of his disability. Knouse v. Primecare Med. of W. Virginia, 333 F.Supp.3d 584, 591 (S.D.W. Va. 2018).

Plaintiff alleges that he was assigned to an upstairs cell and that his medical conditions make it painful to climb stairs. Plaintiff, however, does not alleged he is a qualified individual with a disability, that he was discriminated against, or that any such discrimination was because of his disability. To the extent Plaintiff's ADA claim is based on his cell assignment, Plaintiff has failed to state a claim for relief under the ADA and this claim will be dismissed.

To the extent Plaintiff intends to assert an ADA claim based on the denial of colostomy care, he has also failed. "Although the Fourth Circuit has not addressed this issue in a published opinion, unpublished cases from this circuit, as well as published and unpublished cases from other circuits, indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment." Mondowney v. Baltimore Cnty. Detention Center, No. ELH-17-1538, 2019 WL 3239003, at *7 (D. Md. July 18, 2019) (collecting cases). See, e.g., Miller v. Hinton, 288 Fed. App'x 901, 902-03 (4th Cir. 2008) (affirming dismissal of ADA claim where quadriplegic prisoner failed to show denial of access to colostomy bags and catheters was the result of his

disability); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners"). This claim, therefore, will also be dismissed. Plaintiff, therefore, has failed to state an ADA claim and it will be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's claims against Defendant Wellpath and Defendant LeBliss in his/her official capacity and any claim Plaintiff may have intended to assert under the ADA fail initial review and will be dismissed. Plaintiff's official capacity claim against Defendant McFadden and Plaintiff's individual capacity claims against Defendants LeBliss and Walton survive initial review in accordance with the terms of this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's official capacity claim against Defendant McFadden and Plaintiff's individual capacity claims against Defendants LeBliss and Walton survive initial review in accordance with this Order. Plaintiff's remaining claims fail initial review and are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Wellpath is **DISMISSED** as a Defendant in this matter.

The Clerk is instructed to mail three (3) blank summonses to Plaintiff to fill out and identify the Defendants in this matter, and then return the summonses to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on Defendants McFadden, LeBliss, and Walton. When the Court receives the summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon Defendants McFadden, LeBliss, and Walton.

**IT IS SO ORDERED**.

Signed: October 3, 2022

Martin Reidinger
Chief United States District Judge